UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| PHYLLIS FRANCIS RODGERS | CASE NO. 6:18-CV-01579 |
| VERSUS | JUDGE SUMMERHAYS |
| LAFAYETTE GENERAL MEDICAL CENTER ET AL | MAGISTRATE JUDGE HANNA |

MEMORANDUM RULING

Presently before the Court is the Motion for Summary Judgment [doc. 23] filed by Lafayette General Medical Center, Inc. ("LGMC"), Dana Smith and Krystina Falcon (collectively referred to as "Defendants"). An objection to the Motion was filed by Plaintiff and the matter is now ripe for decision.

I.
BACKGROUND

Ms. Rodgers worked for LGMC for thirty-eight years before being terminated from her employment on January 26, 2018.[1] For numerous years leading up to her termination, Ms. Rodgers had been working in the outpatient surgery department.[2] In approximately April of 2017, Dana Smith became the Manager of the outpatient surgery department and Ms. Rodgers' supervisor and remained in that position through the time of Ms. Rodgers' termination.[3] Krystina Falcon also worked in the outpatient surgery department and held the position of clinical team lead during all times relevant to this lawsuit.[4] From March 2017 through September 2017, Ms. Rodgers was

---

[1] *See* Deposition of Phyllis Rodgers (attached as Exhibit 1 to Doc. 23), 41:1-4.
[2] *Id.*, 35:10-12.
[3] *Id.*, 52:25, 53:1-12, 54:1-5, 178:11-16.
[4] *Id.*, 25:23-25, 26:1-25, 27:1-14.

written up on three separate occasions.[5] In September 2017, Ms. Smith had what Ms. Rodgers referred to as a "crucial conversation" regarding incomplete charting and unsatisfactory work.[6] According to Ms. Rodgers, the result of that conversation what that "one more write-up, [and Rodgers] may be terminated."[7]

On January 17, 2017, Ms. Rodgers called Jason Manafi, the physician assistant for one of LGMC's orthopedic surgeons, Dr. Yerger.[8] In that discussion, Mr. Manafi asked Ms. Rodgers about Dr. Yerger's schedule for the next day. Ms. Rodgers gave Mr. Manafi the incorrect information about the start time for Dr. Yerger's first patient and whether Dr. Yerger would have use of a surgery "flip room."[9] This erroneous information adversely impacted LGMC and its staff as well as Dr. Yerger and his patients.[10] Ms. Smith determined that the consequences of this error were sufficient to terminate Ms. Rodgers' employment.[11]

Ms. Rodgers responded by filing the present Complaint, which asserts race and age discrimination claims respectively under Title VII and the ADEA, as well as a retaliation claim under Title VII, and a claim under federal law for "prejudice against knowledge."[12] Defendants have filed the present motion arguing that they are entitled to summary judgment on each of the claims asserted by Ms. Rodgers.

---

[5] *Id.*, 27:15-25, 28:1-22, 32:4-20, 51:11-25, 52:1-24, 63:14- 21.
[6] *Id.*, 27:15-25, 28:1-22, 63:22-25, 64:1-4, 190:12-25, 191:1- 25, 192:1-23.
[7] *Id.*, 191:11-15; 192:21-23.
[8] *See* Exhibit 1 to Deposition of Phyllis Rodgers, Employee Counseling Form, bearing Bates Stamp LGMC001044; *See* Exhibit 4 to Deposition of Phyllis Rodgers, corresponding to the Statement of Jason Manafi, bearing Bates Stamp LGMC001048.
[9] *Id.*
[10] *Id.*
[11] *See* Exhibit 1 to Deposition of Phyllis Rodgers, Employee Counseling Form, bearing Bates Stamp LGMC001044.
[12] *See* Complaint, Doc. 1, p. 3.

## II.
### LAW AND ANALYSIS

### A. Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010). As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party). "Credibility determinations are not part of the summary judgment analysis." *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002). Rule 56 "mandates the entry of summary judgment . . . against a party

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

**B. Title VII**

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e–2(a). An employer's action will be found unlawful if the employee can demonstrate that race was a "motivating factor" for his or her termination, even if the employer was also motivated by other lawful factors. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citing 42 U.S.C. § 2000e-2(m)). A plaintiff can prove a claim of unlawful discrimination by either direct or circumstantial evidence. Cases built on the latter, such as this one, are analyzed under the framework set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). *See e.g. McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). The *McDonnell Douglas* framework requires Plaintiff to first establish a prima facie case of discrimination by showing: (1) she was a member of a protected class; (2) she was qualified for her position; (3) she was discharged or subject to an adverse employment action by her employer; and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside of the protected group. *Id.*; *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 512 (5th Cir. 2001).

If the plaintiff makes this prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. *McCoy* at 557. The employer's burden is only one of production, not persuasion, and involves no credibility

assessment. *Id.* If the employer meets this burden, the presumption of discrimination disappears, and the plaintiff must then either: (1) offer sufficient evidence to create a genuine issue of material fact that the employer's proffered reason is not true, but instead is a pretext for a discriminatory purpose (the pretext alternative), or (2) demonstrate defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (the mixed-motive alternative). *Id.*; *Vaughn* at 636; *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

Plaintiff's discrimination claims appear to falter on the fourth element of the prima facie showing required under *McDonnell Douglas*. There is no evidence that she was replaced by someone outside her protected class. See *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567 (5th Cir. 1982) (where plaintiff failed to prove that she was replaced, she must establish that the misconduct for which she was discharged was nearly identical to that engaged in by another employee outside the protected class who was retained.) As to whether Plaintiff was treated less favorably than similarly situated employees, there were very few other employees involved in the scheduling issue who would be considered similarly situated. As the Court must assume facts in favor or the non-moving party, the Court finds that there is a genuine issue of material fact regarding this factor. Accordingly, the Court will assume for the sake of this ruling that Plaintiff has established a prima facie case.

Once Plaintiff establishes a prima facie case, the burden shifts to LGMC to articulate a legitimate, nondiscriminatory reason for terminating Ms. Rodgers. The Court finds that LGMC has clearly articulated a legitimate non-discriminatory reason for their action. Over the course of her thirty-year career with LGMC, Ms. Rodgers had been disciplined numerous times. Starting in March 2017, eight months prior to her termination, Ms. Rodgers was written up on three separate

occasions. In September 2017, Ms. Smith had a "crucial conversation" with Rodgers about incomplete charting and unsatisfactory work, which Ms. Rodgers confirmed resulted in her being informed that she might be terminated if she had one more write-up.[13] The final incident which resulted in her termination was the erroneous scheduling information to Dr. Yerger's physician's assistant. There is no dispute that this incident had a significant impact on LGMC and its staff as well as Dr. Yerger and the patients. While Ms. Rodgers argues that she was not solely at fault in the scheduling incident, LGMC clearly believed the error warranted Ms. Rodgers' termination. Plaintiff offers no explanation or facts suggestive that race factored into this employment decision. In fact, in her deposition, ***Ms. Rodgers testified that she did not believe that her race was a reason that LGMC terminated her.***[14] It is irrelevant whether Plaintiff disagrees with LGMC's employment decision; to establish a claim under Title VII, she must show that the incident was pretext or that race was a motivating factor in the decision to terminate her employment. Merely "disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *McDaniel v. Nat'l Railroad Passenger Corp.*, 705 Fed. Appx. 240, 247 (5th Cir. 2017) (citing *LeMaire v. La. Dep't of Trasnp. & Dev.*, 480 F.3d 383, 391 (5th 2007)). Discrimination laws do not afford employees protection "from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1508 (5th Cir. 1998). Employment discrimination laws are not intended to be a vehicle for judicial second-guessing of business decisions, nor … to transform the courts into personnel managers." *McDaniel v. Nat'l Railroad Passenger Corp.*, 705 Fed. Appx. 240, 246 (5th Cir. 2017) (citing *Bryant v. Compass Grp., USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)). Rather, Title VII

---

[13] Deposition of Phyllis Rodgers, 191:11-15; 192:21-23.
[14] *Id.*, at 233:2-3.

is meant only to address unlawful discrimination. Ms. Rodgers has simply not established any basis to claim unlawful discrimination.

Plaintiff has failed to meet her burden of establishing a race discrimination claim under Title VII. Accordingly, Defendants' motion must be granted as to those claims.

**C. ADEA Claim.**

Plaintiff also asserts a claim for discriminatory treatment under the Age Discrimination in Employment Act ("ADEA"). Under the ADEA, the prima facie requirements for a disparate treatment claim are: (1) the plaintiff was subjected to adverse action; (2) the plaintiff was qualified for the position; (3) the plaintiff was within the protected class at the time; and (4) the plaintiff was terminated because of her age.[15] To establish an ADEA claim, "a plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir.2010) (quotation marks and citation omitted). Unlike Title VII claims, the ADEA does not allow the plaintiff to prove discrimination by showing that age was simply a motiving factor. Accordingly, the "but-for" standard is more demanding than the "motivating factor" standard of proof. *Leal v. McHugh*, 731 F.3d 405 (5th Cir. 2013).

As an initial matter, LGMC argues that Ms. Rodgers' age discrimination claim is not properly before the Court because Ms. Rodgers has not allegedly exhausted her administrative remedies. Ms. Rodgers' charge to the EEOC identified age as a basis for the charge.[16] However, Ms. Rodgers acknowledged that she did not elaborate or explain in her charge how LGMC treated her differently because of her age.[17] Rodgers further testified in her deposition that she cannot

---

[15] *Goudeau v. National Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 7/16/15)
[16] Deposition of Phyllis Rodgers, 168:10-11.

[17] Id.

remember whether she reported any age-related issues with respect to her employment with or termination from LGMC to the EEOC.[18] Accordingly, it is unclear whether Ms. Rodgers exhausted her administrative remedies as to the age discrimination claim. The Court finds that there is a genuine issue of material fact as to this issue and will not dismiss the claim on this basis.

Nevertheless, Ms. Rodgers does not identify the discriminatory actions that she claims were based upon her age. She does not allege that she was terminated based upon her age. To the contrary, in her deposition, *she testified that she did not believe that her termination was based upon her age.*[19] In her response to the Motion for Summary Judgment, as evidence to support her claim of age discrimination, Ms. Rodgers points to a report in which a supervisor informed Ms. Rodgers that she was taking twice as long as other nurses to admit and discharge patients. Ms. Rodgers argues that this report shows that she was being criticized for performing tasks slower than her younger colleagues. However, this report was made by a prior supervisor and occurred in 2009, *9 years* prior to Ms. Rodgers' termination. By the Court's calculation, at that time, Ms. Rodgers was not even 50 years old. There is no evidence that this is 9-year old incident was a motivating factor in her termination or that the criticism was in any way tied to her age. There is simply no connection, in time or fact, between that report and Ms. Rodgers' termination.

When asked in her deposition how she was discriminated due to her age, Ms. Rodgers testified that she had a less favorable work schedule than her younger colleagues because she worked three 12-hour shifts per week rather than five 8-hour shifts.[20] However, Ms. Rodgers went on to explain that there was no difference in pay between the shifts and that this shift scheduled was actually an accommodation by LGMC to allow her extra days off to attend school.[21] Based

---

[18] *Id.*, at 168:12-15.
[19] *Id.*, at 233:5-7.
[20] *Id.*, at 175:15-20.
[21] *Id.*, at 175:15-20.

upon Ms. Rodgers' own testimony, she has not established any discriminatory treatment based upon her age.

**D. Retaliation Claim.**

Ms. Rodgers also alleges a claim for retaliation. Title VII prohibits retaliation against those opposing unlawful race discrimination. 42 U.S.C. §2000e-3(a). Title VII retaliation claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework. *Smith v. Bd. of Supervisors of S. Univ.,* 656 F. App'x 30, 32 (5th Cir. 2016) (citing *Long v. Eastfield Coll.,* 88 F.3d 300, 304 (5th Cir. 1996)). To establish a prima facie case of retaliation the plaintiff must show that (i) he engaged in protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link between the protected activity and the adverse employment action. *Hernandez v. Yellow Transp., Inc.,* 670 F.3d 644, 657 (5th Cir. 2012). An employee has engaged in activity protected by Title VII if he has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). Once an employee establishes a prima facie case, the employer must provide a legitimate, nonretaliatory reason for the adverse employment action. If it does, the factfinder must decide whether the retaliation was the "but-for" cause for the employer's action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013); *Hernandez*, 670 F.3d at 657. This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. *Nassar*, 570. U.S. at 360.

It is unclear what protected activity that Plaintiff alleges that she was engaged in prior to her termination. She appears to base her retaliation claim on a complaint she made in March of

2017. At that time, Ms. Rodgers met with her supervisor and complained about her co-workers not performing their jobs well and arguing that the supervisor was not holding LGMC employees accountable.[22] These March 2017 complaints, however, did not involve unlawful discrimination nor did they involve any investigation or proceeding under Title VII. As such, Ms. Rodgers was not engaged in protected activity in making her complaints in March 2017. Accordingly, Plaintiff has failed to establish a prima facie case for retaliation. Further, Plaintiff failed to respond to the arguments regarding the retaliation claim in her objection to the motion for summary judgment, so the Court assumes she has abandoned this argument.

### E. "Prejudice Against Knowledge" Claim.

Ms. Rodgers also asserts a claim of "prejudice against knowledge."[23] When asked about this claim in her deposition, Ms. Rodgers testified that she believed she was treated differently due to the level of knowledge and experience she had. She believed that her co-workers discriminated against her because she was relied upon more than they were as a result of her superior knowledge and experience.[24]

Plaintiff's claim for prejudice against knowledge is not actionable under Title VII or the ADEA because the different treatment that Ms. Rodgers claimed to have experienced was not based upon a protected characteristic, e.g. race, gender, or age. Plaintiff has not identified any other law that gives her a cause of action for being treated differently because of her alleged "superior knowledge" as a nurse. Further, like her retaliation claim, Plaintiff appears to have abandoned this claim as she failed to address it in her objection to the motion for summary judgment. Accordingly, Rodgers's claim for prejudice against knowledge must be dismissed.

---

[22] *Id.*, at 29:8-20, 30:3-15, 117:20-25, 118:1-25, 119:2-5.
[23] Complaint, Section II.
[24] *Id.*, at 195: 23-25, 196:1-3.

# III.
## CONCLUSION

For the foregoing reasons, the Court finds that Defendants have established that there is no genuine issue of material fact as to any of the claims asserted by Plaintiff. Defendants also alleged that Dana Smith and Krystina Falcon should be dismissed as they were not Plaintiff's employer. Plaintiff appears to argue that they were being sued in their representative capacity. Since the Court finds that there are no valid claims against any defendant, it is unnecessary to determine whether Ms. Smith and Ms. Falcon should have been named as defendants in either their personal and/or representative capacities. For the reasons stated, the Motion for Summary Judgment [doc. 23] filed by Defendants is **GRANTED**. Plaintiff's complaint is dismissed in its entirety.

A separate order in conformity with the foregoing reasons will be entered.

THUS DONE in Chambers on this 11th day of February, 2020.

Robert R. Summerhays
United States District Judge